## Hendrickson v. Commonwealth.

(Decided March 1, 1912.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Appeal and Error—Prejudicial Error—Section 340, Criminal Code.—The rule that this court will reverse in a criminal case for any error appearing in the record is no longer in force. Under section 340, Criminal Code, no case will be reversed where the defendant has had substantially a fair trial of the merits of his case.

2. Homicide—Witness—Impeachment—Collateral Fact.—A statement by the accused made shortly before the homicide to the effect that he wanted to kill some God damn man so bad he didn't know what to do, is not collateral, but is competent as showing the defendant's state of mind. Therefore, if the defendant denies that he made such a statement, the contrary may be shown.

3. Appeal and Error—Bill of Exceptions—Review.—Alleged improper remarks of counsel not referred to or embraced in the bill of exceptions will not be considered on appeal.

JAMES M. GILBERT, E. N. INGRAM, O'REAR & WILLIAMS for appellant.

JAMES GARNETT, Attorney General and JAMES D. BLACK, Assistant Attorney General for Commonwealth.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a companion case to Hendrickson v. Commonwealth, 146 Ky., 742, an appeal by Nick Hendrickson, who together with Elbert Hendrickson, who prosecutes this appeal, and Press Hendrickson, was indicted for the murder of "Mexican Joe Morgan." Appellant, Elbert Hendrickson, was awarded a separate trial. The jury found him guilty and fixed his punishment at confinement in the penitentiary for life. From the judgment of conviction he appeals.

The homicide occurred under the following circumstances: Morgan was conducting at Four Mile, in Bell County, a show in which he exhibited some monkeys and an eagle, and in which fortunes were told. Morgan had a large tent in which the main performance took place, and some smaller tents some yards distant in which his family slept and ate their meals. On the night of August 15, 1911, Sallie May King, a young woman, was engaged in selling tickets for the show. Appellant was paying attention to her, and there is evidence that they had been drinking together. When the show closed, she and appellant started for the sleeping tent. Appellant claims that they went there for the purpose of having his fortune told. Morgan was displeased with the conduct of the girl, and told her in substance to pack her things and get ready to go in the morning. According to appellant Morgan told her to get in the tent damn quick or he would kick her in. At that time Morgan had his pistol in his hand. Appellant also had his pistol out. Appellant claims that Morgan raised his gun and said: "God damn you, I will shoot you." Appellant made one step backward and fell. Morgan then shot at him twice, and he fired three shots at Morgan as rapidly as he could. According to the evidence for the Commonwealth, appellant resented Morgan's remarks to the girl, and pulled his pistol and fired at Morgan before the latter fired. Indeed the weight of the evidence is to the effect that appellant was the aggressor.

The court gave the same instructions in this case that he gave on the trial of Nick Hendrickson. The objections now urged to them are the same that were urged on his appeal, where the instructions were considered at length, and held to present the law of the case (Hen-

drickson v. Commonwealth, supra). That being true, it will be unnecessary to consider them again.

It is earnestly insisted that the court erred in permitting certain witnesses to detail conversations had with Nick Hendrickson after the homicide and not in the presence of appellant. We have carefully considered the alleged statements, and find that they have but little, if any bearing, on the question of appellant's guilt. Being of an immaterial character, we are of the opinion that appellant's substantial rights were not prejudiced by their admission. In this connection, counsel for appellant insist that we should apply the rule announced by this court in Coppage v. Commonwealth, 3 Bush, 532, where the court said: "We can not speculate on the actual effect of this blunder. It is sufficient for this court to know that it was wrong, and may have operated to the prejudice of the appellant." This rule, however, is no longer in force in this State. In discussing this question in Hargis v. Commonwealth, 135 Ky., 578, 123 S. W., 239, the court said:

"Section 340 of the Criminal Code of Practice originally read as follows: 'A judgment of conviction shall be reversed for any error of law appearing in the record.' Under this provision many criminal cases were reversed by this court, and so, the better to promote the administration of justice, the Legislature added to the section these words: 'When upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby.' The plain purpose of the amendment was to provide that a judgment of conviction should not be reversed unless upon a consideration of the whole case the court was satisfied that the substantial rights of the defendant had been prejudiced by the error complained of. This had been the rule for a long time under the Civil Code, and the purpose of the amendment was to make the rule in criminal cases practically the same as in civil cases. Under the former provision, the court was required to reverse when it found an error in the record. It was not allowed to speculate as to what was the effect of the error. The amendment was aimed to change this rule, and to provide that no case should be reversed where the defendant has had substantially a fair trial of the merits of his case. We have in a number of cases so construed the amendment. Rutherford v.

Commonwealth, 78 Ky., 639; Whiteneck v. Commonwealth 55 S. W., 916, 56 S. W., 3, 21 Ky. Law Rep., 1625; Bailey v. Commonwealth, 58 S. W., 425, 22 Ky. Law Rep., 512; Ward v. Commonwealth, 91 S. W., 700, 29 Ky. Law Rep., 62; Stacy v. Commonwealth, 97 S. W., 39, 29 Ky. Law Rep., 1242.''

Appellant, on cross-examination, was asked the following question and made the following answer:

"Q. Down there that night at the show before the show started, didn't you pull that gun out, and point it at Sam Payne and say that you wanted to kill some God damn man so bad that you didn't know what to do?''

(Objected to by attorneys for the defendant; objection overruled, to which the defendant excepts.)

"A. No, sir.''

Subsequently Sam Payne testified in rebuttal as follows:

"Q. I will ask you if there while that show was in progress or about the time it commenced, if Elbert Hendrickson in your presence pulled out his gun and said he wanted to kill a man so God damn bad that he didn't know what to do?''

(Objected to by attorneys for defendant; objection overruled by the court, to which the defendant excepts.)

"Q. Did he say that?''

"A. Yes, sir.''

We fail to see any merit in appellant's contention that the impeaching witness should not have been permitted to answer because the time fixed in the question asked of him differed from that fixed in the question asked of appellant. In the question asked appellant, the time fixed was before the show started, while the impeaching witness was permitted to say that the remark alleged to have been made by appellant was made while the show was in progress or about the time it commenced. As the remark itself, the person to whom made, and the circumstances and occasion of its utterance, were sufficiently definite, we regard the slight varition in time as immaterial.

But appellant's chief objection to the above testimony is based on the rule that it is not proper to cross-examine a witness as to a distinct collateral fact for the purpose of impeaching him, but that the witness' answer in such a case must be taken as conclusive. The

objection to this position is that the matter about which appellant was interrogated was not collateral. On the contrary, the remark itself was competent as substantive evidence showing appellant's state of mind just previous to the homicide. (Brooks v. Commonwealth, 100 Ky., 194; Warner v. Commonwealth, 27 Ky. Law Rep., 323.) If as a matter of fact, on the occasion in question he wanted to kill some one, this would be a circumstance tending to show that he killed deceased because he had murder in his heart, and not because deceased first attacked him. As appellant denied that he made the statement, it was clearly competent to show the contrary.

Appellant also insists on a reversal because of certain remarks alleged to have been made by the Commonwealth's Attorney in his argument to the jury. It is sufficient to say in response to this contention that the bill of exceptions does not show that the alleged remarks were made. Therefore, we can not consider them, as we have repeatedly held that the only way in which matters occurring on the trial in the circuit court may be brought up for review in this court is by bill of exceptions. (Louisville Ry. Co. v. Gaar, 112 S. W., 1130; Paducah Light Co. v. Bell, 85 S. W., 216; 27 Ky. Law Rep., 428; Geo. T. Stagg Co. v. Brightwell, 92 S. W., 8, 28 Ky. Law Rep., 1220; Sparks v. Sipple, 131 S. W., 389, 140 Ky., 542.)

Counsel insist that appellant's affidavit showing that the Commonwealth's Attorney was guilty of improper argument may be considered under the rule laid down in Warren v. Nash, 24 Ky. Law Rep., 479. In that case, however, the bill of exceptions itself showed that counsel in his argument discussed matters which were not in evidence, and the court refused to stop him. And this court held that affidavits showing what was said and made a part of the record could be considered in connection with the statement contained in the bill. In the present case the bill of exceptions is silent upon the subject. It does not show that any improper remarks were used. That being true, we can not consider the alleged improper remarks of the Commonwealth's Attorney when they appear only in the affidavit of appellant.

We have carefully considered the other grounds relied on for a reversal, but we deem it unnecessary to discuss them. Suffice it to say that upon a consideration of

the whole case, we find no error in the record prejudicial to the substantial rights of appellant.

Judgment affirmed.